UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                          **DECISION AND ORDER**
                                                            15-CR-81S
MARC IRWIN KORN,                                            11-CR-384S

        Defendant.

## I. INTRODUCTION

Presently before this Court is Defendant Marc Irwin Korn's Motion for Sentence Reduction under the federal compassionate-release statute (Docket No. 421[1]), which the government opposes. See 18 U.S.C. § 3582 (c)(1)(A). For the reasons discussed below, Korn's motion is denied.

## II. BACKGROUND

On November 9, 2018, Korn pleaded guilty to a 2-count superseding misdemeanor information charging him with violating 18 U.S.C. § 2113 (b) (bank theft) and 26 U.S.C. § 7203 (willful failure to pay tax). (Docket No. 373.) Approximately five months later, on April 3, 2019, this Court imposed a combined sentence of 18 months' imprisonment, no fine, 1 year of supervised release, a $50 special assessment, and $3,445,273.48 in restitution. (Docket No. 399.) This Court also recommended that Korn serve his sentence at a U.S. Bureau of Prisons medical facility. (Id.)

On April 17, 2019, the U.S. Bureau of Prisons through the United States Marshals

---

[1] All docket citations are to 11-CR-384S, unless otherwise noted. The docket in 15-CR-81S contains corresponding filings.

1

Service directed Korn to report to FCI Butner Medium I Satellite Prison Camp on May 15, 2019, to begin serving his sentence. Three weeks later, on May 8, 2019, Korn unsuccessfully sought a reduction in his sentence to a term of home detention under 28 U.S.C. § 2255 to avoid reporting to Butner. See United States v. Korn, 19-CV-615S, 11-CR-384S, 2019 WL 2088535 (W.D.N.Y. May 13, 2019). The day after this Court denied that motion, Korn sought a 30-day extension of his May 15, 2019 surrender date, which this Court denied that same day. (Docket Nos. 416, 417.)

Less than two months after reporting to Butner, Korn requested a sentence reduction from the Bureau of Prisons, which denied his request on August 6, 2019. (Docket No. 421-2.) Two weeks later, Korn again requested a sentence reduction, which the Bureau of Prisons denied on August 30, 2019. (Docket No. 421-7.) The Bureau of Prisons denied Korn's third request for sentence reduction on October 4, 2019. (Docket No. 421-8.) In each denial, the Bureau of Prisons found that Korn's medical condition did not qualify him for release under its guidelines.[2]

On December 10, 2019, having served approximately one-third of his sentence, Korn moved in this court for a sentence reduction to time served under 18 U.S.C. § 3582 (c)(1)(A) on the basis that his medical condition constitutes an extraordinary and compelling reason warranting such a reduction. (Docket No. 421.) He supplemented his motion on April 1, 2020, to add the ground that he is also now potentially at risk to develop COVID-19 given the recent outbreak of the coronavirus. (Docket No. 429.) The government opposes Korn's motion on all fronts. (Docket Nos. 425, 430.)

---

[2] The Bureau of Prisons has implemented a Program Statement to guide its own implementation of 18 U.S.C. § 3582 (c)(1)(A). See Bureau of Prisons Program Statement 5050.50, eff. January 17, 2019 (available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query# (last visited April 8, 2019)).

## III. DISCUSSION

### A. Compassionate Release under 18 U.S.C. § 3582 (c)(1)(A)

As amended by the First Step Act of 2018,[3] 18 U.S.C. § 3582 (c)(1)(A)(i) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553 (a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute. See United States v. Ebbers, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020). A defendant proceeding on his or her own motion may meet that burden by demonstrating (1) that he or she exhausted all administrative rights, (2) that extraordinary and compelling reasons exist for a sentence reduction, and (3) that a sentence reduction is consistent with the applicable Sentencing Guidelines provisions. See 18 U.S.C. § 3582 (c)(1)(A)(i); United States v. Perez, 17 Cr.

---

[3] Congress amended 18 U.S.C. § 3582 (c)(1)(A) in the First Step Act of 2018 to allow prisoners to bring their own motions for compassionate release after proper exhaustion. See Pub. L. No. 115-391, 132 Stat. 5194, 5222 (2018). The previous version of the statute permitted only the Bureau of Prisons to bring compassionate-release motions. See, e.g., United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *1 n.1 (S.D.N.Y. Feb. 4, 2020) (explaining the First Step Act amendment); United States v. Gotti, 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) (same).

513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020).  If the court finds, after consideration of the applicable 18 U.S.C. § 3553 (a) factors, that the defendant has met this burden, it may reduce his or her sentence under the statute.  See 18 U.S.C. § 3582 (c)(1)(A)(i); see also United States v. Gileno, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *1-2 (D. Conn. Mar. 19, 2020).

The statutory exhaustion requirement "must be strictly enforced."  United States v. Monzon, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing Theodoropoulos v. I.N.S., 358 F.3d 162, 172 (2d Cir. 2004)).  The exhaustion requirement is met if the defendant establishes either (1) that the Bureau of Prisons denied his or her request that it bring a compassionate-release motion and he or she fully exhausted all administrative appeal rights with respect to that denial, or (2) that the warden of the facility took no action on his or her request for the filing of a compassionate-release motion within 30 days of receiving it.[4]  See 18 U.S.C. § 3582 (c)(1)(A).

Congress delegated to the Sentencing Commission the task of "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582 (c)(1)(A).  See 28 U.S.C. § 994 (t).  The Commission, in turn, promulgated a Policy Statement concerning sentence reductions under 18 U.S.C. § 3582 (c)(1)(A) in § 1B1.13 of the United States Sentencing Guidelines.  The Commentary to that section contains four examples of circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction:  "Medical Condition of the Defendant"; "Age of the Defendant"; "Family Circumstances"; and "Other Reasons".  U.S.S.G. § 1B1.13.

At issue here are the "Medical Condition of the Defendant" and "Other Reasons"

---

[4] It is undisputed that Korn fully exhausted his administrative rights.  (See Declaration of Corey J. Hogan, Esq., Docket No. 421-1, ¶¶ 6, 7.)

examples. The "Medical Condition of the Defendant" example provides as follows:

> Medical Condition of the Defendant—
>
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 comment n. 1 (A).

The "Other Reasons" example is a catch-all provision encompassing "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described." Id. n. 1 (D).

As it relates to the requirement that a sentence reduction be consistent with the applicable Sentencing Guidelines provisions, U.S.S.G. § 1B1.13 is once again the relevant provision. It provides that a court may reduce a sentence if, after consideration of the 18 U.S.C. § 3553 (a) factors, it determines that (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any other

5

person or to the community, as provided in 18 U.S.C. § 3142 (g), and (3) the reduction is consistent with the U.S.S.G. § 1B1.13 policy statement. See U.S.S.G. § 1B1.13.

Finally, district courts have broad discretion in deciding whether to grant or deny motions for sentence reduction. See Gileno, 2020 WL 1307108, at *2.

**B.    Korn's Motion for Compassionate Release**

**1.  Korn's heart condition does not warrant a sentence reduction.**

Korn seeks a reduced sentence to time served on the basis of his serious heart condition, which has played prominently in these proceedings for almost eight years. (See, e.g., Docket Nos. 33, 90, 141, 143.)   Beginning in May 2015, Korn began maintaining that his health prevented him from meaningfully participating in his defense, which resulted in protracted litigation over the severity and limiting effects of Korn's heart condition. (See, e.g., Docket Nos. 187, 194, 202, 215, 219.)  That litigation resulted in this Court finding in February 2016 that Korn's health did not preclude him from preparing for and participating in trial proceedings. (Docket No. 282.)  After additional lengthy proceedings related to Korn's health (see, e.g., Docket Nos. 287, 288, 295, 297, 300, 315, 316, 320, 325, 331, 343), this Court further found in April 2018 that Korn's medical condition did not warrant dismissal of the indictments against him in the interests of justice.  See United States v. Korn, 11-CR-384S, 15-CR-81S, 2018 WL 1947763 (W.D.N.Y. Apr. 25, 2018).  Several months later, Korn entered his guilty pleas in November 2018. (Docket No. 373.)

This Court next fully considered Korn's medical condition when it imposed his 18-month sentence just over one year ago, on April 3, 2019. (Sentencing Transcript, Docket No. 419, p. 7.)  In imposing sentencing, this Court made the following observations:

6

> I'm also aware that you are 62 years old and suffer from several medical conditions including cerebral palsy and a range of cardiac, vascular and pulmonary issues.
>
> Your cardiac condition, which I'm very familiar with because it has been at issue for the past several years, is perhaps the most concerning at this point.
>
> Now I've, in that regard, reviewed the affidavits of Dr. Aquino and Dr. Gianfagna, both of whom detail your coronary artery disease, your 16 stents, seven surgical procedures, and three bypass grants.
>
> Dr. Gianfagna notes that you are currently controlling your symptoms through prescribed medications, but the medications are not a cure, and your most promising treatment would be a cardiac transplant. He notes that your condition is permanent and not expected to improve. He also notes that you are unlikely -- -- as a candidate for transplantation, his view is that you could not withstand the rigors of imprisonment at a general population federal facility. Dr. Aquino pretty much shares Dr. Gianfagna's opinions.

(Sentencing Transcript, pp. 10-11.)

> I do . . . believe that your serious health conditions warrant enhanced consideration, which is again why I recommend that you serve your sentence in a federal medical facility. *There has been no showing that the Bureau of Prisons will be unable to provide adequate treatment for your conditions.*

(Id., p. 12 (emphasis added).)

> I can assure you that I'm going to take into account your medical condition with respect to the appropriate sentence here, and to some extent you're going to get credit for a debilitating medical condition that with, all due respect, I don't think equates to - - if there is incarceration, and there will be, will amount to a death sentence as referred to by your attorney.

(Id., p. 29.)

> I'm going to give you credit for your medical condition, I mentioned that to you. All right? Go ahead, but just so you don't get overly excited, I've taken that into account. All right?

7

And that's very important to me.

(Id., p. 42.)

This Court last considered Korn's medical condition in May 2019, when it denied his motion to reduce his sentence to a term of home detention under 28 U.S.C. § 2255. See Korn v. United States, 19-CV-615S, 11-CR-384S, 2019 WL 2088535 (W.D.N.Y. May 13, 2019.)

Thereafter, the Bureau of Prisons began considering whether Korn's health condition warrants a sentence reduction. On August 6, 2019, it found that Korn was independent in all activities of daily living, was cleared for sedentary work, did not require housing in the inpatient medical unit, had no deterioration in medical status or physical capabilities since arriving, and had an indeterminate life expectancy. (Docket No. 421-2.) On August 30, 2019, it found that Korn had no further disease progression or physical decline and was independent in his functioning, requiring no assistance for his activities of daily living. (Docket No. 421-7.) On October 4, 2019, it found that Korn's medical condition was unchanged, he was independent in his daily skills, and he could function in the correctional environment. (Docket No. 421-8.) The Bureau of Prisons therefore denied each of Korn's three requests for a sentence reduction based on his health.

In his present motion, filed approximately two months after the Bureau of Prisons denied his last request for a sentence reduction, Korn contends that he continues to suffer from extensive coronary artery disease with chronic angina, chronic heart failure, cerebral palsy, hypertension, gastrointestinal reflux disease, gout, and hyperlipidemia. He maintains that since being imprisoned, he has experienced severe chest pains, high blood pressure, and high cholesterol. Medical records from Butner reflect ongoing treatment

for these maladies, but Korn insists that the Bureau of Prisons is unable to satisfactorily treat his medical conditions. (Docket No. 421-9) He claims to have deteriorated to the point where he suffers constant chest pain, cannot stand for a prolonged period, cannot carry anything, and cannot make his own bed. Korn characterizes his condition as "end-stage coronary artery disease."

The government opposes Korn's motion as yet another unsubstantiated and overstated presentation of the severity of his medical condition. Relying on the declaration of Dr. Sara Beyer, Complex Clinical Director at Butner, the government maintains that Korn's condition has not materially changed since he began serving his sentence. (See Declaration of Sara Beyer ("Beyer Decl."), Docket No. 425-1, pp. 26-29.)

Dr. Beyer relates that Korn's medical condition is essentially the same as when he arrived at Butner. (Beyer Decl., ¶ 7 ("When he came to prison, he was at a high risk for a myocardial infarction (heart attack) and still is.")). Korn continues to suffer from serious coronary artery disease with chronic chest pain, hypertension, angina, severe hyperlipidemia, gout, and gastroesophageal reflux disease. (Id. ¶¶ 5, 7, 8.) Dr. Beyer represents that Korn is routinely monitored and treated with medications and was last seen by a cardiologist on July 24, 2019, at which time modifications were made to Korn's medications to better control his chest pain and blood pressure. (Id. ¶ 6.) Dr. Beyer notes that Korn's conditions are all monitored and treated with medications and that Korn is able to walk with a cane, dress, bathe, eat, and perform his other activities of daily living. (Id. ¶¶ 9, 10, 13.) Korn's life expectancy remains indeterminate. (Id. ¶ 7.)

Dr. Beyer further explains that the Butner complex includes a Federal Medical Center, a full working hospital capable of providing inmates with in-patient and skilled-

nursing care, a fact that this Court recognized when it denied Korn's request to delay his voluntary-surrender date. (Id. ¶ 11.) Dr. Beyer affirms that the medical providers at the Butner complex, including community specialists when needed, are fully capable of appropriately monitoring and treating Korn's various medical conditions. (Id. ¶ 12.)

Having considered the evidence of record, this Court finds that a sentence reduction based on Korn's heart condition is not warranted. First, Korn has not established that his heart condition is an advanced terminal illness with an end of life trajectory. See U.S.S.G. § 1B1.13 comment n. 1 (A)(i). Although Korn characterizes his condition as "end-stage organ disease," the most recent medical findings support only the conclusion that Korn continues to suffer from a serious heart condition with an indeterminate life expectancy, as he has for years.[5] Each review of Korn's medical condition reveals that it is materially unchanged since this Court imposed sentence. (See Beyer Decl., ¶ 7.) Consequently, there is no basis to find that Korn suffers from a terminal illness as contemplated in U.S.S.G. § 1B1.13 comment n. 1 (A)(i).

Second, Korn has failed to show that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care in the correctional environment. See U.S.S.G. § 1B1.13 comment n. 1 (A)(ii). Korn is able to walk with a cane, dress, bathe, eat, and perform his other activities of daily living independently. (Beyer Decl., ¶ 13.) Korn's self-serving claims to the contrary, such as that "all he can do is sit in a chair all day and read," are not supported in the medical records. (Declaration

---

[5] Korn claims that he has in fact been diagnosed with a qualifying terminal illness. The only record submitted in support of this claim, however, is an unsigned, undated "Comprehensive Medical Summary" form completed by an unknown individual that indicates that Korn "has been diagnosed with a terminal medical condition . . . Life expectancy is Unknown months." (Docket No. 421-10.) The "prepared by," "attending physician's signature," and "date" portions of the form are all blank. (Id.) This Court therefore gives the form no weight.

of Corey J. Hogan, Esq., Docket No. 421-1, ¶ 56.)  Consequently, Korn's health condition is not extraordinary or compelling under U.S.S.G. § 1B1.13 comment n. 1 (A)(ii).

Korn undoubtedly suffers from a serious heart condition.  That condition, however, is not extraordinary and does not serve as a compelling reason for a sentence reduction. Korn's condition has not materially changed since this Court fully evaluated it at the time of sentencing and determined that the Bureau of Prisons was capable of treating Korn during his warranted period of imprisonment.   The Bureau of Prisons remains capable of adequately treating Korn and is doing so.  Korn's request for a sentence reduction on this basis is therefore denied.

### 2. Possible exposure to COVID-19 does not warrant a reduction in Korn's sentence.

In a supplement to his motion, Korn argues that a sentence reduction is also warranted on the basis that his medical condition makes him more vulnerable to COVID-19 and therefore "more susceptible to death." (Docket No. 429.)  COVID-19, of course, is a worldwide pandemic that required the President of the United States to declare a national emergency on March 13, 2020.  Although Korn does not specifically say so, this Court assumes his position to be that his possible exposure to COVID-19 is an extraordinary and compelling reason for a sentence reduction under the catch-all provision of U.S.S.G. § 1B1.13 comment n. 1 (D).  See United States v. Resnick, 14 CR 810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020) (considering compassionate-release request based on a defendant's high susceptibility to COVID-19 under the "catch-all" provision of U.S.S.G. § 1B1.13 comment n. 1 (D)).

The government argues that Korn's potential exposure to COVID-19 is not an extraordinary or compelling reason for a sentence reduction because Korn has not

demonstrated that his risk of contracting COVID-19 while in custody is significantly higher than if he were to be released, or that the Bureau of Prisons is unable to adequately treat him if he does, in fact, contract the virus.

The Bureau of Prisons has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19. Preparations began in January 2020 when the Bureau of Prisons instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19. See https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited April 8, 2020). This plan is based on guidance and directives from the World Health Organization, the Centers for Disease Control and Prevention, and other related agencies. (Id.) Under this plan, the Bureau of Prisons has implemented quarantine and isolation protocols, restricted inmate transfers, limited group gatherings, employed screening procedures, and suspended visitation and tours. (Id.) These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population. (Id.)

Korn contends that COVID-19 has already spread to Butner, and indeed, at the time of this writing, the Bureau of Prisons reports 40 positive cases at its Butner Medium I complex.[6] See https://www.bop.gov/coronavirus (last visited April 8, 2020). This Court is aware that Korn's medical conditions may place him at increased risk of contracting and succumbing to COVID-19, and is further aware that some courts have granted compassionate release on that basis. See, e.g., United States v. Zukerman, 16 Cr. 194

---

[6] The FCI Butner Medium I complex consists of a medium-security correctional institution, a minimum-security satellite camp, and a federal medical center. It is unclear where the 40 cases are among those distinct facilities and whether any are in the satellite camp where Korn is housed.

(AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases finding that compassionate release is justified for individuals with risk factors that make them particularly susceptible to COVID-19). Nonetheless, in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.

Other courts concur. The Third Circuit recently found that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). Another court has found that "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13."[7] United States v. Eberhart, Case No. 13-cr-00313-PJH-1,

---

[7] Yet another court, entertaining a COVID-19-based motion for release from a state prisoner under 28 U.S.C. § 2254, suggested that prison officials might actually be uniquely situated to guard against communicable diseases:

> Moreover, although the COVID-19 situation is an extraordinary one for the population at large in this country, including prisoners, and without diminishing in the least the fact that petitioner is part of an especially at-risk COVID-19 population, petitioner has not shown that prison authorities are unable or unwilling to address this serious problem within prisons, or that petitioner is unable to take the general, protective measures applicable to all as of yet unafflicted persons, i.e., wash hands frequently, avoid touching face and so forth. Moreover, prison authorities may be able to isolate highly at-risk prisoners, such as petitioner, more easily than isolation or "social distancing" is achieved in the general population, e.g., housing in administrative segregation, partial lockdowns or transfers. Prisons are certainly able to order their afflicted employees to stay at

2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); see also United States v. Zywotko, Case No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900 (M.D. Fla. Mar. 27, 2020) (following Eberhart).

So too, several district courts have denied compassionate-release motions in the absence of a showing that the Bureau of Prisons is unable to manage the pandemic or adequately treat affected inmates. See, e.g., Gileno, 2020 WL 1307108, at *4 ("Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."); Eberhart, 2020 WL 1450745, at *2; Zwotko, 2020 WL 1492900, at *2 (denying compassionate release where "the BOP has implemented an action plan to mitigate the effect of COVID-19 and prevent potential transmissions into and throughout its correctional facilities"); United States v. Clark, 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (applying reasoning of Gileno and Eberhart); United States v. Gagne, No. 3:18-cr-242 (VLB), 2020 WL 1640152, at *4 (D. Conn. Apr. 2, 2020) (denying compassionate release where the defendant failed to show "that the [Bureau of Prisons] cannot adequately manage the [COVID-19] pandemic or treat her to a reasonable degree").

This Court concurs with these courts and finds in accord that the mere *possibility* of contracting a communicable disease, in the absence of any Bureau of Prisons failures, does not rise to the level of an extraordinary and compelling reason to reduce a sentence under U.S.S.G. § 1B1.13 comment n. 1 (D). See Gileno, 2020 WL 1307108, at *4 ("the

---

home, and can probably, more easily find testing opportunities for their essential employees than is yet possible for the general population.

Peterson v. Diaz, No. 2:19-cv-01480 WBS GGH P, 2020 WL 1640008, at *2 (E.D. Cal. Apr. 2, 2020).

Court cannot assume that the Bureau of Prisons will be unable to manage the outbreak or adequately treat Mr. Gileno should it emerge at his correctional facility while he is still incarcerated"); Eberhart, 2020 WL 1450745, at *2.

Here, although COVID-19 cases exist at Butner, Korn has not established that the plan put in place by the Bureau of Prisons is inadequate or that it will be unable to adequately treat him if he contracts COVID-19. To the contrary, Korn is housed at a federal correctional complex with a hospital on-site that is capable of providing immediate in-patient and skilled nursing care, if required. (Beyer Decl., ¶ 11.) Emergency care is also available at local hospitals. (Id.) Accordingly, Korn's request for a sentence reduction on this basis is denied.

### 3. Consideration of the 18 U.S.C. § 3553 (a) factors counsels against a sentence reduction.

Finally, even if it could be found that Korn has demonstrated exceptional and compelling circumstances within the meaning of U.S.S.G. § 1B1.13, this Court would nevertheless deny his motion in the exercise of discretion upon consideration of the factors set forth in 18 U.S.C. § 3553 (a). See 18 U.S.C. § 3582 (c)(1)(A) (requiring consideration of the applicable § 3553 (a) factors).

As this Court discussed at length during sentencing, Korn's conduct involved a pattern of theft, deception, and dishonesty resulting in multi-million-dollar losses. Korn's victims were two financial institutions, a charity, and the Internal Revenue Service. Korn has demonstrated very little remorse or recognition that his conduct was criminal, repeatedly denying any malicious or criminal intent during his sentencing allocution. Although resolved by way of two misdemeanor charges, Korn's criminal conduct is serious and deserving of a significant period of incarceration. Nonetheless, in full

15

consideration of Korn's health condition, this Court imposed a reduced sentence of 18 months' imprisonment as a fair, just, and reasonable sentence.  In this Court's view, further reduction of that sentence would not reflect the seriousness of Korn's offenses, promote respect for the law, provide just punishment, or afford adequate deterrence.

## IV. CONCLUSION

For all of the reasons stated above, Korn's Motion for Sentence Reduction is denied.

## V. ORDER

IT HEREBY IS ORDERED, that Korn's Motion for Sentence Reduction (11-CR-384S, Docket No. 421; 15-CR-81S, Docket No. 115) is DENIED.

SO ORDERED.


Dated:       April 9, 2020
                Buffalo, New York

                                          s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge